UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEITH HEDLUND,

        Plaintiff,                Case No. 1:21-cv-294

v.                                         Honorable Hala Y. Jarbou

UNKNOWN STEINER et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Smith, Purchase, and Niemiec. The Court will also dismiss, for failure to state a claim, the Fourteenth Amendment claims against Defendants Steiner and Blair.

**Discussion**

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officer Unknown Steiner, Hearing Investigator Kavagna Smith, Assistant Resident Unit Manager Unknown Purchase, Assistant Resident Unit Manager Unknown Blair, and Assistant Deputy Warden Unknown Niemiec.

Plaintiff has filed a motion to amend his complaint (ECF No. 6) that seeks to supplement the complaint by correcting the spelling of Defendants' names and seeking additional damages. The Court grants Plaintiff's motion. *See* Fed. R. Civ. P. 15(a) (a party may amend once as a matter of course before a responsive pleading is served). Thus, Plaintiff's complaint is composed of his original filing (ECF No. 1) and the supplement (ECF No. 6). The Court will review the complaint, as amended.

Plaintiff alleges that on September 1, 2020, he was attacked by two other inmates: Vandyken #850128 and Kruse #802622. Plaintiff states that he was hit multiple times with a lock inside of a sock. Plaintiff was taken to Sparrow Hospital and received six staples to close a wound in his head. Plaintiff also suffered a fractured rib. Plaintiff states that he had informed Defendant Steiner of threats made against him earlier in the day, but Defendant Steiner failed to take any action to prevent the attack. Plaintiff explains that when the fight ended, before he could take the weapon to the officers' desk, another fight broke out and Plaintiff received two misconduct tickets.

Plaintiff alleges that at some point around the time the misconduct tickets were turned over to Inspector Chad Williams, they were altered to omit some of the pertinent information, including Inmate Kruse's involvement, and a proper investigation was never

2

conducted. When the incident was turned over to Defendant Smith, Plaintiff informed her of what had happened, but she did not investigate. As a result, Inmate Kruse went unpunished. Plaintiff claims that this ultimately led to him being in more fights.

Plaintiff states that while he was housed in 500 Unit Level 4, Defendant Purchase told him that they knew the names of the men involved in the attacks on Plaintiff, and Plaintiff requested to be kept separate from them. Six weeks later, Plaintiff was transferred to 900 Unit Level 2, where Inmate Kruse was residing. Plaintiff was then attacked twice in a four-day period. Plaintiff told Defendant Blair about the situation and that his attackers were gang members. Defendant Blair stated that he recognized the names of Plaintiff's attackers. Plaintiff asked Defendant Blair to investigate, but he did not take any action.

On October 19, 2020, Inmate Kruse attacked Plaintiff in the big yard, which forced Plaintiff to defend himself. On October 20, 2020, Plaintiff was placed in protective custody and was seen by Defendant Niemiec. Plaintiff explained that there had never been a proper investigation into the September 1, 2020, attack on him, but Defendant Niemiec refused to look into the matter. Plaintiff was kept in protective custody for four months. Plaintiff asserts that the situation could have been resolved if a SPON (Special Problem Offender Notice) had been placed in his file for each of his two attackers. Plaintiff claims that Defendants failed to protect him despite their knowledge of the threats toward Plaintiff and subsequent attacks.

Plaintiff asserts claims under the Eighth and Fourteenth Amendments. Plaintiff seeks damages, as well as equitable relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Procedural due process

Plaintiff claims that Defendant Smith failed to properly investigate the incident that led to his misconduct tickets. Plaintiff appears to allege a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. Plaintiff fails to specify the nature of his misconduct tickets. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B (eff. July 1, 2018), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, contrary to the assertion in his complaint, Plaintiff should not have been denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Even if Plaintiff was convicted of Class I misconducts, he fails to state a due process claim. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court

5

prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Assuming that Plaintiff received major misconduct tickets, a conviction on such a charge would affect a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff fails to make any specific allegations regarding the consequences of his misconduct tickets. Even if Plaintiff was placed in segregation and received loss of privileges, such conditions do not constitute an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Therefore, Plaintiff's procedural due process claim against Defendant Smith is properly dismissed.

## IV. Substantive due process

Plaintiff also appears to allege that Defendants' conduct violated his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388

7

(6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his failure to protect claims. *See Graham, 490 U.S. at 394 (*citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's liberty interest in the misconduct proceedings. Consequently, Plaintiff's substantive due process claims against all Defendants will be dismissed.

## V. Eighth Amendment

Plaintiff claims that Defendants failed to protect him in violation of his Eighth Amendment rights. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

In a recent case, the Sixth Circuit affirmed the district court's dismissal of the plaintiff's failure-to-protect claim, despite the plaintiff having told the defendant that his cellmate had threatened him and that he feared for his safety and the assailant's statement to the defendant that, if the defendant did not move the plaintiff, the assailant was going to do what he had to do. *Reedy v. West*, 988 F.3d 907 (6th Cir. 2021).

The Sixth Circuit found that the plaintiff had not met the objective element of a deliberate indifference claim because, according to the plaintiff's own testimony, his relationship with the assailant was mostly good. *Id.* at 913. There was no evidence that his assailant had previously harmed him or had a history of physical altercations in prison. *Id.* The plaintiff did not belong to a class of prisoners particularly vulnerable to assault. *Id.* at 915. In addition, the Sixth Circuit noted that the last threat made by the assailant occurred about a month before the assault,

so that when the plaintiff and his assailant claimed they needed to be separated, there did not appear to be a substantial risk of serious harm. *Id.* at 913-14.

With regard to the subjective element of a deliberate indifference claim, the Sixth Circuit noted that the plaintiff admitted that he was not assigned to the defendant, who was an Assistant Resident Unit Supervisor, did not regularly see the defendant, and did not really have a relationship with the defendant. *Id.* at 914. The only evidence the plaintiff had regarding the defendant's knowledge of his situation was limited to two conversations, each lasting roughly sixty seconds, during which the plaintiff made a vague statement that he was in fear for his safety and that his cell mate had threatened him. *Id.* The Sixth Circuit concluded that such conclusory evidence did not suffice to show subjective knowledge of a substantial risk of serious harm. *Id.* The Sixth Circuit also considered the assailant's statement to the defendant that if the plaintiff was not moved out of his cell, he was going to "do what he's got to do," and concluded that because threats between inmates were common and do not necessarily impute actual knowledge of a risk of harm, this statement alone was insufficient to show deliberate indifference. *Id.* at 915.

In this case, Plaintiff's allegations against Defendants Smith, Purchase, and Niemiec fail to show that they acted with deliberate indifference. Plaintiff states that Defendant Smith failed to properly investigate his misconduct charges following the first attack on September 1, 2020. At this point, there was no evidence that Plaintiff was in danger of another attack. Because the facts as alleged by Plaintiff do not show that Defendant Smith had actual knowledge of a risk of harm, Plaintiff's Eighth Amendment claim against Defendant Smith is properly dismissed.

Plaintiff alleges that Defendant Purchase knew of the identity of his attackers while he was housed in 500 Unit. Plaintiff states that six weeks later, he was transferred to 900 Unit,

where one of his attackers resided. However, Plaintiff fails to allege any facts indicating that Defendant Purchase was responsible for his transfer or even had any knowledge of the transfer and whether Plaintiff would be housed with one of his attackers. Because the facts as alleged by Plaintiff do not show that Defendant Purchase had actual knowledge of a risk of harm, Plaintiff's Eighth Amendment claim against Defendant Purchase is properly dismissed.

Plaintiff alleges that Defendant Niemiec saw Plaintiff after he was placed in protective custody on October 20, 2020. Plaintiff told Defendant Niemiec that there had never been a proper investigation into the September 1, 2020, attack on him, but Defendant Niemiec refused to look into the matter. However, because Plaintiff was kept in protective custody for four months, he was not in any danger of further assault. Therefore, it is clear that Defendant Niemiec was not deliberately indifferent to a substantial risk of serious harm and is properly dismissed.

As detailed above, Defendants Plaintiff alleges that Defendants Steiner and Blair were aware of the fact that Plaintiff was being threatened with imminent harm prior to him being attacked, but failed to take any action to prevent the attacks. Therefore, he Court concludes that Plaintiff has alleged sufficient facts to show that Defendants Steiner and Blair were deliberately indifferent to a substantial risk of serious harm. Therefore, Plaintiff's Eighth Amendment claims against Defendants Steiner and Blair are not properly dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Smith, Purchase, and Niemiec will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's substantive due

process claims against Defendants Steiner and Blair.  Plaintiff's Eighth Amendment claims against Defendants Steiner and Blair remain in the case.

An order consistent with this opinion will be entered.


Dated:   July 20, 2021                              /s/ Hala Y. Jarbou
                                                                                     HALA Y. JARBOU
                                                                                     UNITED STATES DISTRICT JUDGE