UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH HEDLUND, #469691,

    Plaintiff,                           Hon. Hala Y. Jarbou

v.                                        Case No. 1:21-cv-294

JONATHAN STEINER, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Steiner's Motion for Summary Judgment. (ECF No. 35). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be denied.

**BACKGROUND**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) where the events giving rise to this action occurred. Plaintiff initiated this action against several individuals, however, most of Plaintiff's claims were dismissed on screening. (ECF No. 11-12). At this juncture, the only claims remaining in this matter are Eighth Amendment failure to protect claims asserted against Corrections Officer (CO) Jonathon Steiner and Assistant Resident Unit Supervisor (ARUS) Kurt Blair. Regarding these claims, Plaintiff alleges the following. (ECF No. 1).

-1-

On September 1, 2020, Plaintiff was attacked by two inmates who struck him "multiple time[s] with a lock." Plaintiff suffered a fractured rib and a head injury, which required "six staples." Defendant Steiner "knew that this was happening and let it happen." Plaintiff was later transferred to a housing unit in which one of his attackers resided after which he was "attacked twice in a four day period." Plaintiff spoke with Defendant Blair "about these events and that [he] feared for [his] safety," but Blair "did not take action."

Plaintiff alleges that Defendants Steiner and Blair violated his Eighth Amendment rights by failing to protect him. Defendant Steiner now moves for summary judgment on the ground that Plaintiff failed to properly exhaust his administrative remedies. Plaintiff has responded to Defendant's motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-

moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" for which the defendant bears the burden. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019). The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of his motion, Defendant has submitted evidence that Plaintiff pursued three grievances during the relevant period, none of which concern his present allegations. (ECF No. 36-3, PageID.193-209). Plaintiff does not contest this assertion. Instead, Plaintiff argues that he attempted to submit a grievance against Defendant Steiner, but it was not accepted for filing. Specifically, Plaintiff asserts that, on September 4, 2020, he "wrote a grievance" against Defendant Steiner concerning the events of September 1, 2020. In support of this argument, Plaintiff has submitted an affidavit as well as his copy of the grievance. (ECF No. 37-3, PageID.220-24).

Defendant argues that Plaintiff's submission is insufficient, for two reasons, to defeat his motion for summary judgment. First, Defendant argues that, while Plaintiff has presented evidence that he *wrote* a grievance against him, Plaintiff has failed to establish that he *submitted* this grievance to prison officials. While Plaintiff may not

-6-

have specifically stated that he "submitted" the grievance, he has asserted facts from which it can reasonably be inferred that he did submit the grievance in question.

In his affidavit, Plaintiff asserts that after submitting the grievance in question, he wrote to the grievance coordinator stating that he had failed to receive a receipt or other indication that his grievance was received. (ECF No. 37-3, PageID.220, 222). A reasonable inference from this assertion is that Plaintiff did, in fact, submit the grievance in question. Interpreting this evidence in Plaintiff's favor, as the Court must, this evidence creates a genuine dispute as to whether Plaintiff submitted the grievance in question.

Defendant next argues that, even if it is assumed Plaintiff submitted his Step I grievance, and that he received no response thereto, his claim must nevertheless be dismissed because he failed to pursue his grievance to Step II. In other words, Defendant argues that Plaintiff was required to submit a Step II grievance despite never being provided a grievance identifier.[1] But, as at least one other court has observed, while the MDOC grievance policy does not expressly state that a grievance identifier is necessary to pursue a Step II grievance, "it appears that MDOC facilities nonetheless impose such a requirement." *Martin v. Tanner*, 2021 WL 4595370 at *3 (W.D. Mich.) (citing to testimony by an MDOC grievance coordinator that a grievance identifier is necessary to pursue a Step II grievance).

---

[1] A grievance identifier is a "unique identifying number" assigned to a grievance upon receipt at Step I. *See* MDOC Policy Directive 03.02.130 ¶ X (Mar. 18, 2019).

In sum, genuine disputes of fact remain concerning Plaintiff's actions and whether such constitute exhaustion of his *available* administrative remedies. Stated differently, Defendant has failed to demonstrate that no reasonable fact finder could find for Plaintiff on the question of exhaustion. As such, Defendant has failed to meet his burden to demonstrate that he is entitled to relief on exhaustion grounds.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant Steiner's Motion for Summary Judgment (ECF No. 35) be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 30, 2022

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge